Cowan, Liebowitz & Latman, P.C.
J. Christopher Jensen
Peter R. Porcino
1133 Avenue of the Americas
New York, NY  10036
(212) 790-9200
Attorneys for Respondent

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
In the Matter of the Arbitration Between:
SUNSKAR LTD., as Owner of the M/V                 Civil Action No. 11 CIV 2499
GEORGIA S,

                              Petitioner,

    and

CHINA DIRECT INDUSTRIES INC., as
Charterer, et. ano,

                              Respondents.
-----------------------------------------------------------------


**RESPONDENTS' MEMORANDUM OF LAW
IN OPPOSITION TO THE AMENDED PETITION
<u>TO APPOINT AN ARBITRATOR AND COMPEL ARBITRATION</u>**

1256804v.2 28738/001

**PRELIMINARY STATEMENT**

Respondents China Direct Industries Inc. ("China Direct") and CDII Trading Inc. ("CDII Trading") submit this memorandum in opposition to Petitioner's Amended Petition and Amended Motion to Compel Arbitration. At a conference with the Court on July 1, 2010, the Court granted Petitioner Sunskar Ltd. leave to amend its Petition to add CDII Trading as a respondent and to file an Amended Motion to Compel Arbitration.

In opposition to this Amended Petition and Amended Motion to Compel Arbitration, Respondents incorporate by reference the Affidavits of Lazarus Rothstein and Alex Friedberg sworn to on May 19, 2011 and May 16, 2011, respectively and Respondent's Memorandum of Law in Opposition to the Petition to Appoint an Arbitrator and Compel Arbitration dated May 20, 2011.

The present motion seeks an order against both China Direct and its wholly owned subsidiary CDII Trading compelling them to arbitrate the Petitioner's claim under an unsigned charter party agreement that was allegedly entered into in January 25, 2011 in an exchange of Skype messages.

Respondents submit a) that there was no enforceable agreement to arbitrate because the agreement was conditioned upon the final approval and execution of the written charter party agreement by CDII Trading and b) there is no basis for asserting that China Direct, who is not identified as a party on the alleged charter party, can be compelled to arbitrate. Since there are disputed issues of fact regarding both of these matters, Respondents have requested a trial pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4.

1

## **ARGUMENT**

### A.   **There Was No Fixture of a Charter Party**

The facts and law governing this dispute are fully set forth in the Respondents' prior motion papers and will not be repeated here.  Since the Court has already determined that CDII Trading agreed to arbitrate, we will not reargue that issue here, but will rely upon the prior motion papers and proceedings.

However, Respondents would note that a review of the full transcript of the Skype communications between Mr. Wold and Mr. Friedberg[1] demonstrates that Petitioner's ship, the MV Georgia S, sailed from Halifax, Nova Scotia on January 24, 2010 <u>before</u> there was any agreement on the main terms of a charter party and while the parties were still actively discussing whether and when the iron ore cargo would be available in Manzanillo, Mexico. These Skype discussions clearly demonstrate that the quantity and the availability of the cargo were never "fixed" and active discussions as to this unresolved issue continued for many days following the alleged "fixture" of the charter party.  The owner's agent, David Wold, was actually engaged in trying to assist CDII Trading by seeking other sources of iron ore that might be loaded on the MV Georgia S upon its arrival in Manzanillo and was well aware of the unresolved issue of the availability of the cargo.  The MV Georgia S was evidently transporting other cargo and was eventually bound to travel to Asia for mandatory dry-dock.

The record shows that Mr. Wold was trying desperately, and ultimately unsuccessfully, to help CDII Trading locate cargo that could be transported by the MV Georgia S on its return to Asia for dry-dock.  Throughout these conversations, Mr. Friedberg made Mr. Wold aware of the

---

[1] A full copy of these Skype messages has been submitted to the Court by the Petitioner as Exhibit 6 to the Declaration of David Christian Wold in Support of Petition to Compel Arbitration and will be referenced herein as Tr. pp__.

contingency regarding the cargo and the fact that the charter party agreement could not be finalized until this issue was resolved.

Very clearly, from the Skype messages on January 24th, there was still no agreement as to quantity of cargo to be shipped. There is a discussion that at least 7,000 to 8,000 metric tons of iron ore are not available and David Wold makes suggestions as to how CDII Trading might supplement its shipment and is even making suggestions to Alex Friedberg as to the name of a mine owner in the Manzanillo area that might be able to supply iron ore. (Tr. pp. 81-82)

On January 26th, Mr. Wold asks Mr. Friedberg if the owners can have their representative in Mexico visit the stockpile. (Tr. p. 96) This problem resurfaces on January 27th, when a message is received that the 25,000 metric tons has not been gathered. (Tr. p. 99). Mr. Wold is still attempting to help CDII Trading find iron ore in Manzanillo. (Tr. pp. 100-101). The conversation continues on January 28th as to the availability of other iron ore cargo. This discussion continues over the next several days into early February but it is clear from the discussion that the quantity and availability of the cargo has not been fixed.

These discussions reflect a lack of agreement as to main term of the charter party fixture and are not a mere "detail" to be resolved later. *See, e.g,. Interocean Shipping Co. v. National Shipping & Trading Co.*, 462 F.2d 673, 677 (2d. Cir. 1972) (finding that the District Court should have proceeded to a trial under Section 4 of the Arbitration Act because there was an issue of fact as to whether certain unresolved terms could be considered essential terms of a charter party); *In the Matter of the Arbitration Between J. Lauritzen A/S and Korea Shipping Corporation*, 1986 AMC 2450 (S.D.N.Y. 1986) (finding a triable issue of fact as to whether a freight payment clause was a mere detail or a main term of the charter party).

Similarly, Mr. Friedberg clearly expressed throughout his negotiations that despite the MV Georgia S having sailed without his prior knowledge or approval, CDII Trading would not accept the charter party until it had been reviewed and approved by the senior management of CDII Trading.  Under established principles of contract law, where an offer or a counteroffer is accepted subject to a condition or reservation, neither party is bound to an agreement until the condition or reservation has been withdrawn or satisfied.  *Andolina Shipping Ltd. v. TBS Eurolines Ltd.*, 84 F.Supp.2d 527, 530 (S.D.N.Y. 2000) and cases cited therein (finding no charter party agreement because the fixture of the charter party had been conditioned upon a reconfirmation by the charterer).

### B.   The Issue of Whether There is a Binding Agreement is an Issue for the Arbitrators to Decide

Under Section 4 of the Federal Arbitration Act, 9 U.S.C. §4, the Court "shall hear the parties and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is no in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  In making this determination, the Court's role is limited solely to the question of determining whether a particular dispute is arbitrable and may not make any ruling on the potential merits of the underlying claims. *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648-650, 106 S.Ct. 1415 (1986).

If the Court determines that CDII Trading has agreed to arbitrate, as the Court indicated during our prior conference, the Court should leave it to the arbitrators to decide whether the charter party agreement is a binding agreement, whether it was vitiated by subsequent conduct of the parties and what terms, if any, were included in the charter party agreement.  By demanding arbitration of its damages claim, Petitioner has necessarily agreed to submit to the arbitrators the

4

threshold question of whether the parties have entered into an enforceable charter party upon which the claim for damages rests. *Northern Tankers Cyprus Ltd. v. Lexmar Corp.*, 781 F.Supp. 289 (S.D.N.Y. 1992).

### C. The Amended Petition Fails to State a Claim Against China Direct

The Amended Petition alleges that China Direct Industries, Inc. is doing business as CDII Trading, Inc.  This appears to be the sole basis of any claim in this Amended Petition against China Direct.  Although there is an allegation that Petitioner's counsel wrote a letter on June 23, 2011 to CDII Trading's counsel that its demand for arbitration includes CDII as the doing business name for China Direct and "includes China Direct as the *alter* ego of China Trading"[sic][2], there is no allegation in the Amended Petition itself that CDII is the alter ego of China Direct.  On the contrary, the Petition purports to "reserve its right to file a separate petition demanding China Direct be compelled to arbitrate as, *inter* alia, the *alter ego* of China Trading." Amended Petition, ¶15.

Therefore, this Amended Petition does not expressly state a claim that China Direct may be bound by the alleged charter party between Petitioner and its subsidiary CDII Trading under an *alter ego* theory.  The only claim that is even vaguely alleged against China Direct in this Amended Petition is that China Direct was doing business under the name CDII Trading and that China Direct is therefore a direct party to the alleged charter party agreement.  Yet, the Amended Petition alleges the true fact that CDII Trading Inc. and China Direct Industries Inc., at all relevant times, were and still are separately incorporated.  This allegation negates any claim that CDII Trading Inc. was merely a fictitious business name for China Direct.

---

[2] Although a pleading may plead in the alternative, we note that these two assertions are contradictory.  Either CDII Trading is merely a business name for China Direct or it is a separate corporation whose veil Petitioner seeks to pierce under an *alter ego* theory.

5

A claim must be dismissed unless there are factual allegations sufficient to support the necessary legal conclusions. *Ashcroft v. Iqbal,* __ U.S. __, 129 S. Ct. 1937 (2009); *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010). In this Amended Petition, the allegation that CDII Trading, Inc. is an assumed or fictitious business name (or "d/b/a") of China Direct is a conclusory allegation that is actually contradicted by the other allegations of the Amended Petition. The only *facts* alleged in the Petition are that China Direct and CDII Trading are both separately incorporated entities which renders the claim that CDII Trading is only an assumed business name for China Direct to be completely implausible. A claim is facially plausible only if the pleaded facts permit a court to reasonably infer that the plaintiff is entitled to relief. *Iqbal,* 129 S.Ct. at 1949.

Moreover, beyond the failure to plead a claim that CDII Trading Inc. is merely an assumed business name for China Direct, the evidence submitted to the Court by both parties on the original motion to compel arbitration demonstrates conclusively that CDII Trading is not just an assumed business name for China Direct. Petitioner's own moving papers attach evidence that CDII Trading, Inc. is a separately incorporated subsidiary of China Direct (Wold Declaration, Ex. 1). Mr. Wold further acknowledges that Alex Friedberg always signed himself as presenting "CDII Trading – subsidiary of China Direct Industries, Inc./NASDAQ:CDII" (Wold Declaration, ¶7). The only communication cited by Mr. Wold in his Declaration to support Petitioner's theory that CDII Trading is a fictitious name for China Direct specifically states that CDII Trading, Inc. is a wholly owned subsidiary of China Direct. (Wold Declaration, ¶12, Exhibit 6).[3]

---

[3] The Court may wish to take judicial notice of the fact that the records of the State of Florida Department of State, Division of Corporations, show that China Direct Industries Inc. has never applied for the registration of a "d/b/a," or fictitious, name as "CDII Trading." *See*

6

In sum, the Petitioners' moving papers have not contradicted, in any respect, the Affidavit in Opposition of Lazarus Rothstein, the Executive Vice President and General Counsel of China Direct, that CDII Trading is a wholly owned subsidiary and, as such, is a distinct and separate legal entity from China Direct.  The alleged charter party that was sent to CDII Trading clearly names the Charterer as CDII Trading Inc. and there is no factual basis whatsoever on this record that this name was merely an assumed business name for China Direct.

The Court asked the parties to submit separate letter briefs on the issue of whether the Court could order the arbitration to proceed against CDII Trading before deciding the alter ego claim against China Direct.  We refer the Court to the letter from J. Christopher Jensen, Esq. counsel for Respondents, dated July 18, 2011.  As set forth in that letter, the Courts in this District have read the Federal Arbitration Act to require that the alter ego theory, and other theory determinative of the identity of parties to an arbitration agreement, be tested by an action to compel arbitration under §4 prior to arbitration hearings.  *Hidrocarburos y Derivados, C.A. v. Lemos* 453 F.Supp. 160 (S.D.N.Y. 1977) (Haight, D.J.); *First American Bulk Carrier Corp. v. Van Ommeren Shipping (USA), LLC*, 540 F.Supp.2d 483 (S.D.N.Y. 2008); *cf. Builders Federal (Hong Kong) Ltd. v. The Turner Construction*, 655 F.Supp. 1400 (S.D.N.Y. 1987).

This Court's question may be moot, however, given that the Amended Petition against China Direct is, by its express terms, based solely upon the allegation that China Direct was doing business as CDII Trading Inc. and that allegation is not sustainable as a matter of law or fact.  The Amended Petition does not allege that China Direct may be compelled to arbitrate

---

http://www.sunbiz.org/ficiown.html (last accessed July 29, 2011).  Florida law prohibits any person from engaging in business under a fictitious name unless they first register with the Florida Department of State.  Fl. Laws § 865.09.

7

based upon an *alter ego* theory but purports to reserve that claim for another day.  Therefore the Amended Petition against China Direct must be dismissed.

## CONCLUSION

Based upon the foregoing, the Amended Petition must be dismissed against respondent China Direct Trading, Inc. and the issue of whether respondent CDII Trading, Inc. is bound to arbitrate should be set down for trial pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. §4 and the Court should award such other and further relief as may be just and proper.

Dated: New York, New York
July 29, 2011

COWAN, LIEBOWITZ & LATMAN, P.C.

By   /s/ *J. Christopher Jensen*
J. CHRISTOPHER JENSEN (jcj@cll.com)

1133 Avenue of the Americas
New York, New York 10036-6799
(212) 790-9200