BLANK ROME LLP
Jeremy J.O. Harwood
The Chrysler Building
405 Lexington Avenue
New York, NY 10174-0208
Telephone: (212) 885-5000
Attorneys for Petitioner

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the Matter of the Arbitration Between:<br><br>SUNSKAR LTD., as Owner of the M/V GEORGIA S,<br><br>      Petitioner,<br><br>  and<br><br>CD II TRADING INC., CHINA DIRECT INDUSTRIES INC. d.b.a. CD II TRADING INC., as Charterer,<br><br>      Respondents. | 11 Civ. 2499(DLC) |

# SUNSKAR LTD.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF AMENDED PETITION TO APPOINT ARBITRATOR AND TO COMPEL ARBITRATION

134845.00602/7041558v.2

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

THE FACTS ................................................................................................................................2

1. Sunskar Cancelled Further Business On January 24, 2011 ...................................2

2. The Cargo Quantity Was Agreed Upon .................................................................3

3. There Was No "Condition Or Reservation" ..........................................................4

ARGUMENT ...............................................................................................................................5

1. The Existence Of The Charter And, Thereby, The Obligation To Arbitrate Is For The Court To Decide ...............................................................................................5

2. China Direct May Be Compelled To Arbitrate If The Court Concludes That It Used China Trading As A Doing Business Name .................................................6

3. Sunskar Requests An Evidentiary Hearing Only If Needed In Respect Of China Trading's Obligation to Arbitrate ..........................................................................6

CONCLUSION ............................................................................................................................7

134845.00602/7041558v.2

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Andoline Shipping Ltd. V. TBS Eurolines Ltd.*,
  84 F.Supp. 2d 527 (S.D.N.Y. 2000) ...........................................................................4

*Great Circle Lines Ltd. v. Matheson & Co.*,
  681 F.2d 121 (2d Cir. 1982) ........................................................................................2

*Orion Shipping & Trading Co. v. Eastern States Petroleum Corp.*,
  312 F.2d 299 (2d Cir. 1963) ........................................................................................5

*Paper Express, Limited v. Pfankuch Maschinen GmbH*,
  972, F.2d 753, 757 (7th Cir. 1992) ..........................................................................2, 3

*Samsun Corp. v. Khozestan Mashine Kr Co.*,
  926 F. Supp. 436 (S.D.N.Y. 1996) ..............................................................................2

*Stolt Tankers Inc. v. Marcus Oil & Chemical, et al.*,
  2001 U.S. Dist. LEXIS 19750 (S.D.N.Y. Nov. 29, 2001) ..........................................1

*United States v. Stump Home Specialties Mfg., Inc.*,
  905 F.2d 1117 (7th Cir. 1990) ....................................................................................2

**STATUTES**

9 U.S.C. § 4 ........................................................................................................................6

134845.00602/7041558v.2

## INTRODUCTION

SUNSKAR LTD., as Owner, of the M/V GEORGIA S ("Owner") respectfully submits this reply brief.

The original petition to compel China Direct[1] to arbitrate was opposed by both respondent companies, claiming to be separate corporations. Respondents' opposition brief dated July 29, 2011 ("CD Brief") states "[s]ince the Court has already determined that CDII Trading agreed to arbitrate, we will not reargue the issue here, but will rely upon the prior motion papers and proceedings." (*Id.* at 2). It is unclear what China Trading means by this, especially given that it nevertheless advances two legal arguments:

(a) that "[t]here was no fixture of a charter party" (*Id.* at 2-4); and

(b) the "issue of whether there is a binding agreement is an issue for the arbitrators to decide." (*Id.* pp. 4-5).

China Trading also states that it, and China Direct, "have requested a trial." (*Id.* at 1) China Trading is undeniably a party to the Charter and an order may be entered to compel it to arbitrate now, without the further expenditure of legal and judicial resources of a "summary trial." See, *Stolt Tankers Inc. v. Marcus Oil & Chemical, et al.*, 2001 U.S. Dist. LEXIS 19750 *8-9 (S.D.N.Y. Nov. 29, 2001).

For even if *"the rankest amateur decides to participate in an established commercial industry, he is as bound by the customs and practices of that industry as the*

---

[1] Definitions are taken, unless otherwise stated, from Sunskar's opening brief dated July 11, 2011.

1

*most grizzled veteran.*" [*Samsun Corp. v. Khozestan Mashine Kr Co.*, 926 F. Supp. 436, 440 (S.D.N.Y. 1996)]. *See, also, Paper Express, Limited v. Pfankuch Maschinen GmbH*, 972, F.2d 753, 757 (7th Cir. 1992) ("But a party who agrees to terms in writing without understanding or investigating those terms does so at his own peril." [citing] *United States v. Stump Home Specialties Mfg., Inc.*, 905 F.2d 1117, 1120 (7th Cir. 1990)). China Trading, through Mr. Friedberg, claims that it knew not what it was doing in vain.

## THE FACTS

The facts are fully supported by the exhibits to the previously filed affidavit of Jeremy J.O. Harwood, sworn to on the 12th day of April, 2011 ("Harwood Aff."); Declaration of David Wold dated June 6, 2011 ("Wold Dec.") and Supplemental Declaration of Jeremy Harwood dated July 11, 2011[2] (the "Harwood Dec."). We address some of Respondents' new factual assertions:

### 1.   Sunskar Cancelled Further Business On January 24, 2011

Respondents state that the vessel "sailed from Halifax … <u>before</u> there was any agreement to main terms of a charter party …". (*Id.* at 2, emphasis added). As stated by Mr. Wold, Sunskar terminated a separate charter at $15,000 per day for the Vessel "in order to meet the laycan dates for Manzanillo Project." (Wold Dec. ¶47). The only significance of Respondents' mistaken assertion is that they have now learned the Second Circuit case law that agreement to "main terms" creates a "fixture."[3] Respondents

---

[2] Exhibits to the respective declarations are referred to herein by their designated number.

[3] Respondents refer to "Fixture of a Charter Party." As stated in *Great Circle Lines Ltd. v. Matheson & Co.*, 681 F.2d 121, 125 (2d Cir. 1982) "The 'main' terms when agreed upon are entitled a 'fixture.'"

implicitly concede that there was agreement to "main terms" and thus a fixture. Moreover, Respondents were fully on notice of the Vessel sailing to meet its new contractual obligation (the "laycan" dates); and, as required by the Charter, they received numerous "ETA" notices - none of which we rejected. *See, e.g.* Wold Dec. ¶ 63, Exs. 11, 12. Indeed, Mr. Friedberg even discussed joining the Vessel for the ballast trip. (Wold Dec. ¶ 64).

### 2. The Cargo Quantity Was Agreed Upon

Respondents claim that the "Skype discussions clearly demonstrate that the quantity and availability of the cargo was never 'fixed' ...". (*Id*. at 2).

This, again, shows an unfamiliarity with what constitute "main terms." First, the "availability" of an agreed upon cargo is always the charterer's primary obligation. Here the agreed load port was Manzanillo, where upon timely tender of notice of readiness it was Respondents' absolute obligation to load the Vessel.

Respondents, through their lawyers rather than by any probative evidence, claim that there was a "contingency regarding the cargo ... [and] the charter party agreement could not be finalized until this issue was resolved." (*Id*. at 3). This claim is supposedly based on review of the Skype communications between January 24 – 28, 2011. Respondents' counsel states such review establishes "[t]hese discussions reflect lack of agreement as to a main term of the charter party fixture . . .". (*Id*. at 3) Significantly, Mr. Friedberg offers no testimony on the point. Mr. Friedberg confirmed, without equivocation or condition (or "contingency") all "main terms," including the demurrage

3

rate that had been left open. (Wold Dec. ¶¶ 42, 55). For the avoidance of doubt, New York arbitration was also expressly agreed upon. (Wold Dec. ¶54).

The assertion that the "quantity" was not agreed upon is false. The cargo quantity of 25,000 m.t. was agreed upon at the outset. (Wold Dec. ¶¶31, 42). The fact that Mr. Wold **after** the "fixture" communicated to help Respondents to find additional cargo is immaterial. (Wold Dec. ¶¶69-70)

### 3. There Was No "Condition Or Reservation"

The assertion that China Trading "would not accept the [Charter] until it had been reviewed and approved by senior management" of China Trading and that this "condition or reservation" was not "withdrawn or satisfied", resulting in their being no fixture (citing *Andoline Shipping Ltd. V. TBS Eurolines Ltd.*, 84 F.Supp. 2d 527, 530 (S.D.N.Y. 2000) is also without merit. (CD Brief at 4). This argument is again offered without any testimony on the point. The Charter had, Mr. Friedberg advised on January 24, 2011, been "sent ... out to everyone on the team today." And Mr. Friedberg on January 25, 2011 stated "All other terms in the Charter party mentioned above have been agreed upon." (Wold Dec. ¶ 68). Respondents also received "hard" copies of the Charter with demur or protest (Wold Dec. Exs. 8, 9, 10).

## ARGUMENT

1. **The Existence Of The Charter And, Thereby, The Obligation To Arbitrate Is For The Court To Decide**

Respondents argue:

> If the Court determines that CDII Trading has agreed to arbitrate, as the Court indicated during our prior conference, the Court should leave it to the arbitrators to decide whether the charter party agreement is a binding agreement, whether it was vitiated by subsequent conduct of the parties and what terms, if any, were included in the charter party agreement.

CD Brief at 3.

The suggestion that by demanding arbitration Sunskar "has necessarily agreed to submit to the arbitrators the threshold question of whether the parties here entered into the enforceable [charter] . . ." is ludicrous. (*Id.* at 4-5). Respondents deny the existence of the Charter and, thereby, the existence of the arbitration clause in it. The one does not exist without the other.

In *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp.*, 312 F.2d 299, 301 (2d Cir. 1963), the Court held that:

> . . . a decision whether parties other than those formally signatories to an arbitration clause may have their rights and obligations determined by an arbitrator when that issue has not been submitted to him is not within the province of the arbitrator himself **but only for the court**.
> (emphasis added).[4]

---

[4] *See also, AT&T Technologies, Inc. Communications Workers*, 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986) ("whether the parties have agreed to submit a particular dispute to arbitration, that is, the 'question of arbitrability,' is an issue for judicial determination [u]nless the parties clearly and unmistakable provide otherwise.")

It is not for the arbitrators to determine "whether the charter party agreement is a binding agreement."

### 2. China Direct May Be Compelled To Arbitrate If The Court Concludes That It Used China Trading As A Doing Business Name

Respondents are correct that "the Amended Petition does not expressly sate a claim that China Direct may be bound . . . under any alter ego theory." (*Id.* at 5) Nevertheless, and without the Amended Petition having asserted that theory, Respondents choose to argue the point. (*Id.* at 6 - 7). Any ruling on that issue prior to a petition to compel China Direct to arbitrate on that basis is premature.

### 3. Sunskar Requests An Evidentiary Hearing Only If Needed In Respect Of China Trading's Obligation to Arbitrate

"When the parties disagree about whether they entered into an arbitration agreement subject to the FAA, the FAA directs that the 'Court shall proceed summarily to ... trial' of the issue. 9 U.S.C. § 4." *U.S. Titan, Inc.*, 241 F.3d at 145. To the extent this Court does not find that the Wold Declaration and its exhibits evidence (1) an agreement to New York arbitration and (2) "main terms" of the Charter by and between Sunskar and China Trading, then Sunskar respectfully requests an opportunity for discovery in order to depose Mr. Friedberg, and the "team" or "BIG GUYS" to whom he reported and, thereafter, an evidentiary hearing. *c.f. Stolt Tankers Inc. Id.* at *8 ("Although Marcus seeks an evidentiary hearing, no hearing is necessary because even assuming Marcus's factual assertions are true, as a matter of law the charter party here is enforceable.")

## **CONCLUSION**

Petitioner respectfully requests that this Court grant the amended petition and appoint three alternate arbitrators on behalf of Respondents China Trading and/or China Direct d.b.a. China Trading and then to proceed in the New York arbitration in accordance with the terms of the Charter and grant such other and further relief as may be equitable.

Dated: New York, New York
       August 4, 2011

                              Respectfully submitted,

                              BLANK ROME LLP
                              Attorneys for Petitioner Sunskar Ltd.

                       By: /s/ Jeremy J.O. Harwood
                              Jeremy J.O. Harwood
                              The Chrysler Building
                              405 Lexington Avenue
                              New York, NY 10174-0208
                              Telephone: (212) 885-5000